



## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA *ex. rel.* KAREN HARCOURT, D.O., et al., | **FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730** |
| Plaintiffs, | Civil A. No. 14   4566 |
| v. |  |
| HEALOGICS, INC., THE GOOD SAMARITAN HOSPITAL, GOOD SAMARITAN HEALTH SYSTEM, and ST. MARY MEDICAL CENTER, | JURY TRIAL DEMANDED |
| Defendants. | **FILED** AUG 1 2014 MICHAEL E. KUNZ, Clerk By_____ Dep. Clerk |

## COMPLAINT FOR DAMAGES AND OTHER RELIEF UNDER THE *QUI TAM* PROVISIONS OF THE FEDERAL FALSE CLAIMS ACT

Plaintiff-Relator Karen Harcourt, D.O. ("Relator" or "Dr. Harcourt") brings this action, on behalf of the United States of America and the States of California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Montana, Nevada, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, Virginia, Washington, Wisconsin and the District of Columbia, and the Cities of Chicago and New York (collectively "State and City Plaintiffs"), against Defendants Healogics, Inc., The Good Samaritan Hospital, Good Samaritan Health System and St. Mary Medical Center (collectively, "Defendants") to recover monies that Defendants wrongfully obtained from government healthcare programs through false or fraudulent claims for payment.

For her causes of action, Relator alleges as follows:

1

## NATURE OF ACTION

1.      This action arises under the provisions of Title 31 U.S.C. § 3729 *et seq.*,

known as the False Claims Act ("FCA"), and pursuant to analogous provisions of state

and local law, including the following:

California False Claims Act, Cal. Gov't Code § 12651 *et seq.*
Colorado Medicaid False Claims Act, Rev. Stat. § 25.5-4-304 *et seq.*
Connecticut False Claims Act, Chapter 319v § 17b-301a *et seq.*
Delaware False Claims and Reporting Act, Del. Code Tit. 6, § 1201 *et seq.*
Florida False Claims Act, Fla. Stat. § 68-081 *et seq.*
Georgia False Medicaid Claims Act, Ga. Code § 49-4-168 (2007)
Hawaii False Claims Act - False Claims to the State, Haw. Rev. Stat. § 661-21 *et seq.*
Illinois Whistleblower Reward and Protection Act, 740 Ill. Comp. Stat. 175/1 *et seq.*
Indiana False Claims and Whistleblower Protection Act, Ind. Code § 5-11-5.5 *et seq.*
Louisiana Medical Assistance Programs Integrity Law, La. Rev. Stat. § 46:437.1 *et seq.*
Maryland False Claims Act, Md. Code Ann., Health-Gen. § 2-601 *et seq.*
Massachusetts False Claims Act, Mass Laws Ch. 12, § 5(A) *et seq.*
Michigan Medicaid False Claims Act, Mich. Comp Laws Serv. § 400.601 *et seq.*
Minnesota False Claims Act, Minn. Stat. § 15C.01 *et seq.*
Montana False Claims Act, Mont. Code § 17-8-401 *et seq.*
Nevada Submission of False Claims to State or Local Government Act, Nev. Rev. Stat. § 357.010 *et seq.*
New Jersey False Claims Act, N.J. Stat. § 2A:32C-1 *et seq.*
New Mexico Medicaid False Claims Act., N.M. Stat § 27-14-1 *et seq.*
New York False Claims Act, N.Y. St. Fin. Law § 187 *et seq.*
North Carolina False Claims Act, N.C. Gen. Stat. § 1-605 *et seq.*
Oklahoma Medicaid False Claims Act, 63 Okl. St. § 5053 *et seq.*
Rhode Island False Claims Act, R.I. Gen. Laws § 9-1.1-1 *et seq.*
Tennessee False Claims Act, Tenn. Code § 4-18-101 *et seq.*
Tennessee Medicaid False Claims Act, Tenn. Code § 71-5-181 *et seq.*
Texas Medicaid Fraud Prevention, Tex. Hum. Res. Code § 36.001 *et seq.*
Virginia Fraud Against Taxpayers Act, Va. Code § 8.01-216.1 *et seq.*
Washington Medicaid Fraud False Claims Act, Wash. Rev. Code Ann. § 48.80.010 *et seq.*
Wisconsin False Claims Act, Wis. Stat. § 20.931 *et seq.*
District of Columbia False Claims Act, D.C. Code § 2-308.13 *et seq.*
City of Chicago False Claims Act, Mun. Code, § 1-22-010 *et seq.*
New York City False Claims Act, Adm. Code § 7-801 *et seq.*

(collectively, "Analogous *Qui Tam* Statutes").

2.     Relator brings this action to recover losses from false claims submitted to the United States and the State and City Plaintiffs as a result of the sustained fraudulent conduct of Defendants.

3.     Relator brings this action to recover statutory treble damages and civil penalties under the FCA.

4.     Finally, Relator brings this action to recover all available damages and other monetary relief under the common law or equitable theories of unjust enrichment and payment by mistake of fact.

5.     Relator alleges that Defendants knowingly submitted thousands of false claims to the United States for reimbursement which resulted in millions of dollars of reimbursement that would not have been paid but for the Defendants' misconduct. Relator believes, and therefore alleges, that such misconduct has been occurring for more than five years, and continues to occur presently.

6.     Under the FCA, a private person may, under certain circumstances, bring an action in federal district court for himself/herself and for the United States, and may share in any recovery. 31 U.S.C. § 3730(b).  That private person is known as a relator, and the action that the relator brings is called a *qui tam* action.

## PRELIMINARY STATEMENT

7.     This suit is not based upon prior public disclosures of allegations or transactions in a criminal, civil, or administrative hearing, lawsuit or investigation or in a Government Accounting Office or Auditor General's report, hearing, audit, or investigation, or from the news media.

3

8.     To the extent that there has been a public disclosure unknown to Relator, she is an original source under 31 U.S.C. § 3730(e)(4). Relator has direct and independent knowledge of the information on which the allegations are based.

9.     Relator voluntarily presented this information to the federal government prior to filing this lawsuit.

10.    Under the federal False Claims Act, this Complaint is to be filed *in camera* and remain under seal for a period of at least 60 days and shall not be served on Defendants until the Court so orders. The Government may elect to intervene and proceed with the action within sixty days after the Government receives the Complaint and the material evidence and information.

## JURISDICTION AND VENUE

11.    This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because Defendants can all be found in, resides in, and/or transact business in this District. In addition, this Court has personal jurisdiction over Defendants because Defendants' acts prohibited by 31 U.S.C. § 3729 *et seq.* occurred within this District.

12.    The United States District Court for the Eastern District of Pennsylvania is the proper venue for this dispute under 29 U.S.C. § 1391(b), since a substantial part of the events and omissions giving rise to the claims occurred in this judicial district.

4

## PARTIES

13.     Plaintiff-Relator Karen Harcourt, D.O., is an adult individual who worked at Defendant Good Samaritan Hospital from October 2011 through January 2013.

14.     Dr. Harcourt served as the Medical Director at the Good Samaritan Center for Wound Care and Hyperbaric Medicine ("GSH Wound Care Clinic"). The GSH Wound Care Clinic was managed by Defendant Healogics, Inc.

15.     Before becoming the Medical Director at GSH in 2011, Relator Dr. Harcourt worked as an Assistant Medical Director and Medical Director at three separate wound care facilities owned by Naples Community Hospital in Florida from May 2005 through October 2011. These facilities were managed by National Healing Corporation ("NHC"), a predecessor company to Healogics.

16.     Defendant Healogics, Inc. ("Healogics") claims it is the largest provider of advanced wound care services in the nation. Upon information and belief, Healogics is a Delaware corporation with its principal place of business located in Jacksonville, Florida.

17.     According to its website, Healogics and its affiliated companies manage more than 500 wound care centers across the United States and treat "nearly 200,000 patients per year through a connected network of centers, partner hospitals, academic medical centers, patients and families."

18.     Among other things, Healogics touts itself as being able to provide hospitals with all aspects of the revenue cycle management, from registration to coding, charging, billing and collecting while providing easy to read reports. Healogics claims

5

that Hyperbaric Oxygen Therapy services require specialized billing, which can be very difficult, time consuming, and if not done properly, can be extremely costly to a hospital.

19.     In 2011, NHC, a provider of wound and disease management solutions for hospitals, and Diversified Clinical Services, also a provider of specialized wound care management services to hospitals, merged to form Healogics.

20.     Defendant Good Samaritan Hospital ("GSH") is a Pennsylvania corporation, located at 4th and Walnut Streets, Lebanon, Pennsylvania, and is a provider of healthcare services.

21.     GSH is a 140-bed, acute-care hospital. GSH has more than 490 employees and 200 physicians representing more than 30 specialties. It offers 24-hour emergency care, a cardiac catheterization lab, intensive and critical care units and services including wound care, bariatric and laparoscopic surgery, diagnostic imaging, orthopedics and physical therapy. According to its website, GSH serves more than 100,000 people across several counties in Pennsylvania.

22.     Upon information and belief, Healogics has a contract with GSH to provide wound care services and manage the GSH Wound Care Clinic.

23.     Defendant St. Mary Medical Center ("St. Mary") is a Pennsylvania corporation, located at 1201 Langhorne-Newtown Road, Langhorne, Pennsylvania, and is a provider of healthcare services.

24.     St. Mary is a 374-bed, acute-care hospital. St. Mary has more than 3,700 employees and 700 physicians representing numerous specialties.

25.     In July 2001, St. Mary became a member of Catholic Health East, a Catholic health-care system with a regional focus. Catholic Health East is the second

6

largest regional healthcare system in the Delaware Valley region of the eastern United

States.

26.     Upon information and belief, Healogics has a contract with St. Mary to

provide wound care services and manage the St. Mary Wound Healing & Hyperbaric

Medicine Center ("St. Mary Wound Care Center"). This center is an outpatient service

that specializes in the treatment of hard-to-heal sores, pressure ulcers, surgical wounds,

chronic venous stasis ulcers and traumatic injuries.

27.     The St. Mary Wound Care Center is located in the Cornerstone Executive

Suites, 1 Cornerstone Drive, Suite 500, Langhorne, Pennsylvania.

## THE FALSE CLAIMS ACT

28.     The FCA provides for the award of treble damages and civil penalties for,

*inter alia*, knowingly presenting or causing the presentment of false or fraudulent claims

to the United States for payment or approval. 31 U.S.C. § 3729(a)(1)(A).

29.     At the time relevant to this suit, the FCA provided, in pertinent part, that

(a) Any person who (1) knowingly presents, or causes to be
presented, to an officer or employee of the United States
Government or a member of the Armed Forces of the United States
a false or fraudulent claim for payment or approval; (2) knowingly
makes, uses or causes to be made or used, a false record or
statement to get a false or fraudulent claim paid or approved by the
Government; (3) conspires to defraud the Government by getting a
false or fraudulent claim allowed or paid; . . .

is liable to the United States Government for a civil penalty of not
less than $5,000 and not more than $10,000, plus 3 times the
amount of damages which the Government sustains because of the
act of that person . . ..
(b) For purposes of this section, the terms "knowing" and
"knowingly" mean that a person, with respect to information . . .
(1) has actual knowledge of the information; (2) acts in deliberate
ignorance of the truth or falsity of the information; or (3) acts in

7

reckless disregard of the truth or falsity of the information, and no
proof of specific intent to defraud is required.

31 U.S.C. § 3729.

## FEDERAL HEALTHCARE PROGRAMS

30.     Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 - 1395ggg
(1999), establishes the Health Insurance for the Aged and Disabled Program, popularly
known as the Medicare Program. The Secretary of HHS administers the Medicare
program through the Centers for Medicare and Medicaid ("CMS"), a component of HHS.

31.     At all relevant times to this Complaint, the Medicare Program was a
federally-funded and administered program intended to assist elderly and disabled
persons in paying for the cost of health care.

32.     The Medicare program is comprised of four parts -- Medicare Parts A, B,
C and D -- and works by reimbursing health care providers for the costs of service and
ancillary items at fixed rates.

33.     The United States provides reimbursement for Medicare claims out of the
Medicare Trust Fund. The Medicare Trust Fund is supposed to reimburse healthcare
providers, such as Defendants, only for those services that were actually performed and
were medically necessary for the health of the patient and that were ordered specifically
by a physician, using appropriate medical judgment and acting in the best interest of the
patient. The Medicare Trust Fund relies on the implied representations of the suppliers of
Medicare services, reimbursable in whole or in part under Medicare, that the services
billed by the providers were medically necessary for the patient and were actually
performed as billed and compensable by Medicare. Medicare required that the services

8

had to be physically performed and billed according to Medicare policies and procedures codes.

34.     The federal Medicare regulation excludes from payment services that are not reasonable and necessary. 42 C.F.R. § 411.15(k)(1)

35.     CMS oversees the Medicare program.  Regional intermediaries acting for Medicare set the compensation rates for services by assigning a specific amount of money to each five-digit Medicare code (the "CPT Code"), which code identified with particularity the nature of the service performed.

36.     Upon information and belief, Defendants received payment under the Medicare Program for fraudulent services.

## WORKERS' COMPENSATION PROGRAMS

37.     The federal and various state workers compensation programs are government funded programs which provide payment to medical care providers for treatment of injuries received while on the job.

38.     Upon information and belief, Defendants received payment under the federal and the various state workers compensation programs for fraudulent services.

## TRICARE

39.     TRICARE is a federally funded medical insurance program for military personnel, retirees, their spouses and unmarried dependent children under the age of 22, administered by TRICARE Management Activity, pursuant to 10 U.S.C.  §§ 1071-1107. TRICARE was established by Title 10, U.S.C. Chapter 55 (formerly known as CHAMPUS) and operates in accordance with policies and procedures set forth in Department of Defense TRICARE regulation 6010.8-R, 32 C.F.R Part 199.

9

40.     TRICARE prohibits improper billing practices such as unbundling and/or manipulating CPT Codes as a means to increase reimbursement.  32 C.F.R. § 199.9(c). Such practices are considered fraudulent and abusive and a misrepresentation of services. 32 C.F.R. §§ 199.9(c)(5) – (c)(8).

41.     Any physician providing services and asking TRICARE for reimbursement has an obligation to submit claims for non-covered costs or non-chargeable services disguised as covered.  32 C.F.R. § 199.9(c)(2).  The physician has a further obligation not to submit claims that are fictitious, or include or are supported by any written statement that asserts as material fact that is false or fictitious, or include or are supported by any written statement that omits a material fact that the provider had a duty to include and the claims is false or fictitious as a result of such omissions.  32 C.F.R § 199.2.

42.     Upon information and belief, Defendants received payment under the TRICARE program for fraudulent services.

### FACTS RELEVANT TO DEFENDANTS' FRAUDULENT SCHEMES

### A.     Background Information Related to Hyperbaric Oxygen Therapy

43.     Hyperbaric oxygen therapy ("HBOT") is a medical treatment that involves giving a patient a high concentrations of oxygen within a pressurized chamber. Originally developed for the treatment of decompression sickness, HBOT is primarily an adjunctive treatment for the management of select non-healing wounds.

44.     HBOT is defined as intermittent administration of 100% oxygen inhaled at a pressure greater than sea level. The treatment may be given in multiplace chambers

10

compressed to depth by air while the patient breathes 100% oxygen through a facemask or hood, or in monoplace chambers compressed to depth with oxygen.

45.     Breathing 100% oxygen delivered at an elevated pressure increases the amount of oxygen delivered to organs and tissues in the body.  This improves the effects of certain antibiotics, activates white blood cells to fight infection and promotes the healing process of chronic wounds.

46.     For the purposes of coverage under Medicare, HBOT is a modality in which the entire body is exposed to oxygen under increased atmospheric pressure. Medicare reimbursement will be limited to therapy that is administered in a chamber.

47.     The number of patients or individuals receiving HBOT is growing, and the costs per patient can be very high.

48.     Indeed, as far back as 2000, the Office of Inspector General for HHS, as part of a report on HBOT, stated that total costs for outpatient HBOT treatments and physician supervision average between $7,000 and $12,000 with extremes exceeding $100,000.

49.     A HBOT chamber looks like this:





50.    The following conditions have been defined for program reimbursement

by National Coverage Determination (NCD) for HBOT:

1.  Acute carbon monoxide intoxication - It is considered reasonable and
    medically necessary for patients with persistent neurological dysfunction
    to require subsequent treatment within six to eight hours, continuing once
    or twice daily until there is no further cognitive function improvement.

2.  Decompression illness.

3.  Gas embolism.

4.  Gas gangrene.

5.  Acute traumatic peripheral ischemia. HBOT is a valuable adjunctive
    treatment to be used in combination with accepted standard therapeutic
    measures when loss of function, limb, or life is threatened.

12

6. Crush injuries and suturing of severed limbs. As in the previous conditions, HBOT would be an adjunctive treatment when loss of function, limb, or life is threatened.

7. Progressive necrotizing infections (necrotizing fasciitis).

8. Acute peripheral arterial insufficiency.

9. Preparation and preservation of compromised skin grafts (not for primary management of wounds).

10. Chronic refractory osteomyelitis, unresponsive to conventional medical and surgical management.

11. Osteoradionecrosis as an adjunct to conventional treatment.

12. Soft tissue radionecrosis as an adjunct to conventional treatment.

13. Cyanide poisoning.

14. Actinomycosis, only as an adjunct to conventional therapy when the disease process is refractory to antibiotics and surgical treatment.

15. Diabetic wounds of the lower extremities in patients who meet the following three criteria:

    i. Patient has type I or type II diabetes and has a lower extremity wound that is due to diabetes;

    ii. Patient has a wound classified as Wagner grade III or higher; and

    iii. Patient has failed an adequate course of standard wound therapy.

40. The use of HBOT is covered as adjunctive therapy only after there are no measurable signs of healing for at least 30 days of treatment with standard wound therapy and must be used in addition to standard wound care. Continued treatment with HBOT is not covered if measurable signs of healing have not been demonstrated within any 30-day period of treatment.

41. Further, records must demonstrate the involvement of a physician skilled in the management of the systemic complication of diabetes particularly cardiovascular and neurovascular complication.

42. The American Medical Association ("AMA") has developed the Current Procedural Terminology ("CPT") codes to describe surgical, diagnostic and other

13

procedures that are uniformly used among physicians, coders, patients and payers for administrative and analytical purposes. To obtain reimbursement for a procedure or device, physicians must submit bills for reimbursement to insurance administrators – including all government healthcare programs – listing the appropriate CPT codes for the procedures performed.

43.    The only CPT Code for "Physician or Other Qualified Health Care Professional Attendance and Supervision of Hyperbaric Oxygen Therapy, per Session" is 99183.

44.    CPT Code 99183 is not time-based. It is used per session.

45.    The average total allowed charge per treatment, based on CPT Code 99183, in the metropolitan Philadelphia area in 2014 was $205.78 for a "non-facility" and $121.65 for treatment provided in a facility.[1]  *See* 2014 Fee Schedule from www.cms.gov.  Coupled with the relatively high average number of treatments per individual (i.e., 20 treatments), this results in an average allowed therapy cost of more than $2,500-$4,000 for a single patient.

46.    In comparison, the "national average" charge for CPT Code 99183 in 2011 was not much lower than 2014 - $207.94 for a non-facility price and $118.58 for treatment provided in a facility. *See* 2011 Fee Schedule from www.cms.gov.

47.    Similarly, a 2010 report by the American Diabetes Association estimated that treatment of a diabetic foot wound could take approximately 60 hours and cost more than $50,000 if reimbursed by Medicare (approximately $500,000 if private pay). B.

---

[1] The "Facility Price" is the fee schedule amount when a physician provides this service in a facility setting, such as a hospital or Ambulatory Surgical Center (ASC).

14

Lipsky, et al., Hyperbaric Oxygen Therapy for Diabetic Foot Wounds, 33 DIABETES CARE 1143 (May 2010).

48.     The Healthcare Common Procedure Coding System ("HCPCS") is a set of health care procedure codes based on the AMA's Current Procedural Terminology ("CPT") and established by CMS to standardize identification of medical services, supplies and equipment.

49.     The HCPCS code for "Hyperbaric Oxygen Under Pressure, Full Body Chamber, Per 30 Minute Interval" is C1300.

## B.     Healogics Relationships with Hospitals and Specific Fraudulent Conduct

49.     Wound care clinics similar to the ones at GSH and St. Mary, which are both managed by Healogics, utilize a staff of doctors, nurses and therapists to deliver wound management.

50.     Although a primary care physician may provide a patient with a referral, a patient can refer himself or herself to a wound care clinic. Before beginning treatment, the doctors, nurses and therapists of the wound care clinics will evaluate the patient's wound and review his or her medical history and general health.  The patient may even be asked to undergo special tests to provide the physicians at the wound care clinics with important information about the patient's blood flow, tissue oxygenation and whether or not infection is complicating the healing process.

51.     Wound care clinics provide daily wound management to patients in a specialized setting, including HBOT management, infections in wound care, treating diabetic ulcers and dressing solutions.

15

52.     Healogics provides hospitals with management and administration of the

revenue cycle, from registration to coding, charging, billing and collecting while

providing easy to read reports.  Healogics claims that HBOT services require specialized

billing, which can be very difficult, time consuming, and if not done properly, can be

extremely costly to a hospital.

53.     Numerous hospitals in Pennsylvania utilize HBOT and other wound

management therapies.

54.     Healogics manages wound care centers associated with the following

Pennsylvania hospitals, among others:

1.  Good Samaritan Hospital, Lebanon, PA;
2.  Heart of Lancaster Regional Medical Center, Lancaster, PA;
3.  The Reading Hospital and Medical Center, Wyomissing, PA;
4.  Berwick Hospital Center, Berwick, PA;
5.  Penn Wound Center, Penn Presbyterian Medical Center, Philadelphia, PA;
6.  Jeanes Hospital, Philadelphia, PA;
7.  Chester County Hospital, West Chester, PA;
8.  Abington Memorial Hospital, Abington, PA;  and
9.  Roxborough Memorial Hospital, Philadelphia, PA.

55.     Healogics' conduct and tactics result in significant over-billing and the

over-use of health services paid for by federal and state healthcare programs.

56.     For example, Healogics management exerts pressure to follow the

company's Clinical Practice Guidelines ("CPG"), which, among other things, promote

weekly visits even when that volume of visits is not warranted.

57.     The Healogics CPGs are an elementary guide to standardize management

of medical problems, but they do not, and should not, replace independent decisions of

physicians with individual patients.

16

58.     Healogics management instructs the Program Directors at each facility to criticize and/or discipline any physician who does not follow the company's CPGs. Indeed, upon information and belief, Healogics management often terminates these physicians for not following Healogics' deceptive CPGs.

59.     Upon information and belief, many physicians employed at the Healogics' wound care centers are intimidated and coerced by Healogics' tactics and often carry out whatever instructions Healogics places in order to preserve their jobs.

### a.     Specific Misconduct at Good Samaritan Hospital

60.     In July 2011, GSH hired Relator Dr. Harcourt to serve as the Medical Director of the Good Samaritan Center for Wound Care and Hyperbaric Medicine ("GSH Wound Care Clinic"), specializing in wound care management. In this role, Dr. Harcourt provided professional wound care and medical director services. From her first day on the job, Dr. Harcourt performed her job duties in exemplary fashion.

61.     The GSH Wound Care Clinic has three HBOT chambers.  The GSH Wound Care Clinic treated approximately 30 wound patients daily and used the HBOT chamber for 10-12 "dives" daily during Dr. Harcourt's time there.

62.     While Dr. Harcourt was ostensibly the Medical Director of the GSH Wound Care Clinic, GSH has a management services agreement with Healogics to manage the GSH Wound Care Clinic. In other words, Dr. Harcourt worked for GSH as the Wound Care Clinic's Medical Director, but Healogics managed the administration side of the GSH Wound Care Clinic

17

63.     Dr. Harcourt's medical treatment plans were often at odds with the business-oriented plans and methods of Healogics, especially Meghan Engler, Healogics' Program Director at the GSH Wound Care Clinic.

64.     For example, Ms. Engler urged and instructed Dr. Harcourt to use the HBOT chamber at GSH for patients who did not require HBOT treatment.

65.     Ms. Engler persistently pushed Relator Dr. Harcourt to find HBOT patients and bring them back weekly because the "census was low and Healogics needed the money."

66.     Similarly, upon information and belief, Healogics prodded Dr. James Keller, M.D. and Dr. David G. Rell, D.O. to bring patients back weekly. Dr. Keller and Dr. Rell were physicians who worked in the GSH Wound Care Clinic and/or referred patients to the GSH Wound Care Clinic.

64.     Ms. Engler told Dr. Harcourt that Ms. Engler obtained access to GSH's patient records so she could search for patients with diagnoses of soft tissue radionecrosis or osteonecrosis from cancer radiation treatment or with osteomyelitis (bone infection). Ms. Engler then called these patients' physicians to tell those doctors to send the patients for HBOT.

65.     The sole purpose of Ms. Engler's misconduct was to direct physicians to send their patients to the GSH Wound Care Clinic for treatment with HBOT because Ms. Engler needed to reach certain internal quotas set by Healogics.

66.     Relator alleges that Adrienne Abner, Healogics' Regional Vice-President/Director, had knowledge of Ms. Engler's conduct.  Upon information and

18

belief, Ms. Abner managed Healogics wound care centers for more than ten hospitals as part of her region.

67.     Upon information and belief, Relator believes, and therefore alleges, that Healogics instructed, and continues to instruct, its Program Directors and Nurse Managers to dictate care and treatment plans that require overutilization to physicians at numerous Healogics' clinics.  Relator experienced this misconduct at both GSH and at the three Florida facilities where she served as Assistant Medical Director or Medical Director.

68.     Relator has first-hand knowledge of the pressures placed on Medical Directors at various Healogics wound care centers. This pressure includes mandatory weekly, sometimes daily, meetings with a clinic's Program Director as well as mandatory monthly meetings with the Regional Directors where quotas and sales numbers were more important than medical care.

69.     In addition, Healogics' employees changed Relator's treatment plans for patients, primarily by increasing return visit time from two to three weeks to one week. This change could be made electronically without Dr. Harcourt's knowledge.

70.     Further, upon information and belief, Healogics would cause HCFA 1500 forms to be submitted to state and federal healthcare benefit programs requesting payment for HBOT, well knowing at the time that such HCFA 1500 forms, *inter alia*, falsely specified the patient's medical conditions, and knowing that healthcare benefit programs were likely to approve payment in reliance on the accuracy of such diagnoses.

c.     **Specific Misconduct at St. Mary Medical Center**

71.     The Wound Healing and Hyperbaric Medicine Center at St. Mary ("St. Mary Wound Care Clinic") has two HBOT chambers.

72.     Healogics used a "Hyperbaric Screening Checklist" at its St. Mary Wound Care Clinic.

73.     Mary Ellen Dobson is Healogics' former Program Director at the St. Mary Wound Care Clinic.

74.     Elizabeth Schaaf, MBA, CHES, is the current Healogics' Program Director at the St. Mary Wound Care Clinic.

75.     Similar to GSH, upon information and belief, St. Mary Hospital has contracted with Healogics to manage the St. Mary Wound Care Clinic.

76.     Ms. Schaaf urged doctors at the St. Mary Wound Care Clinic to require weekly visits from their patients, even if such treatment is, and was, not necessary.

77.     Relator Dr. Harcourt has been told that doctors at the St. Mary Wound Care Clinic have written prescriptions or treatment plans for a patient that includes a return visit in two weeks or three weeks, but the nurses or administrators change the plan to one week on instructions from Healogics. As discussed above, similarly, Dr. Harcourt also had treatment plans changed to weekly visits from her prescribed two weeks.

78.     For example, in April 2013, Ms. Schaaf sent an email to one of Dr. Harcourt's peers at St. Mary requesting that the doctor set up treatment plans requiring a weekly visit, without regard for medical care or condition:

> With you being out next week, **please write out a week** (unless they are palliative of course) and then we can have the patient go back to you the following week.

20

Hope this is fine. **Our volumes could plummet other wise** and the days to heal will be affected. However, I will be out on the road two days each week so **I will see the fruits of my labor in a month**.

[Emphasis added].

79.     An earlier email by Ms. Schaaf demonstrates her need to meet certain

Healogics quotas:

> **I am far behind our [Healogics] plan** so I have to see 18 patients a day which means 10 and 8 but padding in some for cancelations as we must due to 2-4 cancellations a day. **I must reach 18 in a day**. We do the best we can to compress the schedule but we don't want to get a reputation that we move patients around. I was told by a few docs in the field that they have experienced this here and will not refer. . . .
>
> **Sue needs us to meet plan to be fiscally sound. Thanks for bringing patients back weekly**. . . .

[Emphasis added].

80.     On several occasions, Ms. Dobson, the former Program Director for

Healogics at St. Mary, complained that one of the doctors at St. Mary was not performing

enough debridements[2], stating that his "numbers" were far below the average expected.

Ms. Dobson is an administrative employee and not skilled and/or experienced to decide

when a patient needs a surgical debridement.

81.     Ms. Dobson further stated that Healogics does not get paid for "regular

visits" and needed more complicated procedures done, or the St. Mary Wound Care

Clinic would lose revenue.

82.     Further, when one of the doctors at the St. Mary Wound Care Clinic

refused to simply order more procedures or utilize the HBOT chamber unnecessarily, Ms.

Dobson complained that the doctor "won't follow the program."

---

[2] Debridement is the medical removal of dead, damaged or infected tissue to improve the healing potential of the remaining healthy tissue.

83.     For example, in June 2013, one of the doctors at the St. Mary Wound Care Clinic was instructed by Healogics management to classify a particular patient as a "new" patient because this patient had not been seen in thirty (30) days.  Healogics management at St. Mary informed the doctor that Healogics could now bill for a "new patient" instead of a follow-up patient.  This was important because a nurse can take the whole medical history again, which is an increased billing code.

84.     Ms. Dobson has previously insisted that a certain physician not be allowed by Healogics to serve as the St. Mary Wound Care Clinic's medical director, even though the hospital interviewed that same physician for the job.  Ms. Dobson claimed the St. Mary Wound Care Clinic would not drive enough volume because the physician did not strictly adhere to the company's CPGs. Also, Ms. Dobson blamed him because the St. Mary Wound Care Clinic was not making enough money.  Ms. Dobson stated that both she and Healogics would ensure that the particular physician was eliminated as a medical director prospect because of his refusal to follow their business-oriented CPGs.

85.     Ms. Dobson set up a "HBO run sheet" which was a list of potential patients who may be eligible for HBOT.  Ms. Dobson, and now Ms. Schaaf, have the Wound Care Clinic's RNs contact various physicians in order to encourage them to use HBOT for their patients, whether they need it or not.

86.     In January 2013, Mary Ellen Crane, the Nurse Manager at the St. Mary Wound Care Clinic, stated that Ms. Dobson was "badgering" physicians and all the staff and nurses to bring patients in for more frequent visits; Ms. Dobson also complained that the physicians were not ordering enough procedures.  According to Relator's peers at St.

22

Mary, Ms. Crane was concerned about changing diagnoses to push more patients into HBO chambers.

87.     Relator has also been told that Ms. Dobson had directed Gene Hathaway, an HBOT technician, to review every indication document and change every patient who had the diagnosis of a pressure ulcer to a diabetic ulcer if the patient had diabetes. When Ms. Crane objected to this plan, Ms. Dobson argued with her and claimed that Ms. Crane "ruined everything I try to do here." Only a physician can change medical records as ordered by Ms. Dobson.

88.     By changing the primary wound diagnosis, Ms. Dobson was able to place the patient into HBOT and tell the treating physician that the patient meets the indications for payment.

89.     Upon information and belief, these are all corporate tactics implemented by Healogics across the nation.

## COUNT I
## False Claims Act - Presentation of False Claims
## 31 U.S.C. § 3729(a)(1), 31 U.S.C. § 3729(a)(1)(A), as amended in 2009
## Against All Defendants

90.     The allegations of the preceding paragraphs are realleged as if fully set forth below.

91.     Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information which supported claims to CMS, and Federal Programs, with actual knowledge of the falsity of the information that supported these claims, cause, and continues to be causing, the use of false or fraudulent materials or information to support claims paid by the government.

23

92.     Through the acts described above and otherwise, Defendants and their agents and employees knowingly presented or caused to be presented to the United States Government false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1), and, as amended, 31 U.S.C. § 3729(a)(1)(A).

93.     The United States of America, unaware of the falsity of the claims and statements made by Defendants, and in reliance on the accuracy of these claims and statements, paid and is continuing to pay or reimburse claims for Defendants' products and devices for patients enrolled in federally-funded medical care programs.

94.     As a direct result of Defendants' actions as set forth in the Complaint, the United States of America has been damaged, with the amount to be determined at trial, and is also entitled to statutory penalties.

## COUNT II
### False Claims Act - Making or Using False Records
### or Statements to Cause Claim to be Paid
### 31 U.S.C. § 3729(a)(2), 31 U.S.C. § 3729(a)(1)(B), as amended in 2009
### Against All Defendants

95.     The allegations of the preceding paragraphs are realleged as if fully set forth below.

96.     Through the acts described above and otherwise, Defendants and their agents and employees knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of 31 U.S.C. § 3729(a)(2), and, as amended, 31 U.S.C. § 3729(a)(1)(B), in order to get false or fraudulent claims paid and approved by the United States Government.

97.     The United States of America, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance on the accuracy of these claims and/or

statements, paid and is continuing to pay or reimburse claims for Defendants' products

and devices for patients enrolled in federally-funded medical care programs.

98.     As a direct result of Defendants' actions as set forth in the Complaint, the

United States of America has been damaged, with the amount to be determined at trial,

and is also entitled to statutory penalties.

**COUNT III**
**False Claims Act – Conspiracy**
**31 U.S.C. § 3729(a)(3), 31 U.S.C. § 3729(a)(1)(C) as amended in 2009**
**Against All Defendants**

99.     The allegations of the preceding paragraphs are re-alleged as if fully set

forth below.

100.    Through the acts described above and otherwise, Defendants entered into

a conspiracy or conspiracies to defraud the United States by getting false and fraudulent

claims allowed or paid in violation of 31 U.S.C. § 3729(a)(3), and as amended 31 U.S.C.

§ 3729(a)(1)(C).  Defendants also conspired to omit disclosing or to actively conceal

facts which, if known, would have reduced Government obligations to it or resulted in

repayments from it to Government programs.

101.    Defendants, their agents, and their employees have taken substantial steps

in furtherance of those conspiracies, *inter alia*, by preparing false records, by submitting

claims for reimbursement to the Government for payment or approval, and by directing

their agents and personnel not to disclose and/or to conceal its fraudulent practices.

102.    The United States, unaware of Defendants' conspiracy or the falsity of the

records, statements and claims made by Defendants, their agents and employees, and as a

result thereof, has paid and continues to pay millions of dollars that it would not

otherwise have paid.  Furthermore, because of the false records, statements, claims, and

25

omissions by Defendants and their agents and employees, the United States has not recovered federal funds from Defendants that otherwise would have been recovered.

## COUNT IV
### California False Claims Act
### Cal. Gov't Code § 12651 *et seq.*
### Against Defendant Healogics, Inc.

103.    The allegations of the preceding paragraphs are realleged as if fully set forth below.

104.    This is a claim for treble damages and civil penalties under the California False Claims Act. Cal. Gov't Code § 12651 *et seq.*

105.    By virtue of the numerous acts of illegal and improper conduct described above, including kickbacks and false marketing, Defendants knowingly caused to be presented to the California Medicaid Program (i.e., Medi-Cal) false or fraudulent claims for the improper payment or approval of the Defendants' products and devices and used false or fraudulent records to accomplish this purpose.

106.    The California Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by the Defendants, paid for claims that otherwise would not have been allowed.

107.    By reason of these payments, the California Medicaid Program has been damaged, and continues to be damaged in a substantial amount.

## COUNT V
### Colorado Medicaid False Claims Act
### Colo. Rev. Stat. § 25.5-4-304 *et seq.*
### Against Defendant Healogics, Inc.

108.    The allegations of the preceding paragraphs are realleged as if fully set forth below.

109.    This is a claim for treble damages and civil penalties under the Colorado
Medicaid False Claims Act. Colo. Rev. Stat. § 25.5-4-304 *et seq.*

110.    By virtue of the numerous acts of illegal and improper conduct described
above, including kickbacks and false marketing, Defendants knowingly caused to be
presented to the Colorado Medicaid Program false or fraudulent claims for the improper
payment or approval of Defendants' products and used false or fraudulent records to
accomplish this purpose.

111.    The Colorado Medicaid Program, unaware of the falsity or fraudulent
nature of the claims caused by Defendants, paid for claims that otherwise would not have
been allowed.

112.    By reason of these payments, the Colorado Medicaid Program has been
damaged, and continues to be damaged in a substantial amount.

### COUNT VI
### Connecticut False Claims Act
### Conn. Gen. Stat. § 17b-301a *et seq.*
### Against Defendant Healogics, Inc.

113.    The allegations of the preceding paragraphs are realleged as if fully set
forth below.

114.    This is a claim for treble damages and civil penalties under the
Connecticut False Claims Act, Conn. Gen. Stat. § 17b-301 *et seq.*

115.    By virtue of the numerous acts of illegal and improper conduct described
above, including kickbacks and false marketing, Defendants knowingly caused to be
presented to an officer or employee of the state and the Connecticut Medicaid Program
false or fraudulent claims for the improper payment or approval of the Defendants'
products and devices and used false or fraudulent records to accomplish this purpose.

27

116.     The Connecticut Medicaid Program, unaware of the falsity or fraudulent

nature of the claims caused by Defendants, paid for claims that otherwise would not have

been allowed.

117.     By reason of these payments, the Connecticut Medicaid Program has been

damaged, and continues to be damaged in a substantial amount.

## COUNT VII
### Delaware False Claims Act
### Del. Code Ann. tit. 6, § 1201 *et seq.*
### Against Defendant Healogics, Inc.

118.     The allegations of the preceding paragraphs are realleged as if fully set

forth below.

119.     This is a claim for treble damages and civil penalties under the Delaware

False Claims Act. Del Code Ann. tit. 6, § 1201 *et seq.*

120.     By virtue of the numerous acts of illegal and improper conduct described

above, including kickbacks and false marketing, Defendants knowingly caused to be

presented to the Delaware Medicaid Program false or fraudulent claims for the improper

payment or approval of Defendants' products for its pharmaceuticals mentioned above

and used false or fraudulent records to accomplish this purpose.

121.     The Delaware Medicaid Program, unaware of the falsity or fraudulent

nature of the claims caused by Defendants, paid for claims that otherwise would not have

been allowed.

122.     By reason of these payments, the Delaware Medicaid Program has been

damaged, and continues to be damaged in a substantial amount.

## COUNT VIII
### Florida False Claims Act
### Fla. Stat. Ann. § 68.081 *et seq.*
### Against Defendant Healogics, Inc.

123.     The allegations of the preceding paragraphs are realleged as if fully set forth below.

124.     This is a claim for treble damages and civil penalties under the Florida False Claims Act. Fla. Stat. Ann. § 68.081 *et seq.*

125.     By virtue of the numerous acts of illegal and improper conduct described above, including kickbacks and false marketing, Defendants knowingly caused to be presented to the Florida Medicaid Program false or fraudulent claims for the improper payment or approval of Defendants' products and devices and used false or fraudulent records to accomplish this purpose.

126.     The Florida Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

127.     By reason of these payments, the Florida Medicaid Program has been damaged, and continues to be damaged in a substantial amount.

## COUNT IX
### Georgia False Medicaid Claims Act
### Ga. Code Ann. § 49-4-168 *et seq.*
### Against Defendant Healogics, Inc.

128.     The allegations of the preceding paragraphs are realleged as if fully set forth below.

129.     This is a claim for treble damages and civil penalties under the False Medicaid Claims Act, Ga. Code Ann. § 49-4-168 *et seq.*

130.    By virtue of the numerous acts of illegal and improper conduct described above, including kickbacks and false marketing, Defendants knowingly caused to be presented to the Georgia Medicaid Program false or fraudulent claims for the improper payment or approval of the Defendants' products and devices and used false or fraudulent records to accomplish this purpose.

131.    The Georgia Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

132.    By reason of these payments, the Georgia Medicaid Program has been damaged, and continues to be damaged in a substantial amount.

## COUNT X
### Hawaii False Claims Act
### Haw. Rev. Stat. § 661-22 *et seq.*
### Against Defendant Healogics, Inc.

133.    The allegations of the preceding paragraphs are realleged as if fully set forth below.

134.    This is a claim for treble damages and civil penalties under the Hawaii False Claims Act. Haw. Rev. Stat. § 661-22 *et seq.*

135.    By virtue of the numerous acts of illegal and improper conduct described above, including kickbacks and false marketing, Defendants knowingly caused to be presented to the Hawaii Medicaid Program false or fraudulent claims for the improper payment or approval of the Defendants' products and devices and used false or fraudulent records to accomplish this purpose.

136.    The Hawaii Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

137.    By reason of these payments, the Hawaii Medicaid Program has been damaged, and continues to be damaged in a substantial amount.

## COUNT XI
### Illinois Whistleblower Reward and Protection Act
### 740 Ill. Comp. Stat. 175/1 *et seq.*
### Against Defendant Healogics, Inc.

138.    The allegations of the preceding paragraphs are realleged as if fully set forth below.

139.    This is a claim for treble damages and civil penalties under the Illinois Whistleblower Reward and Protection Act. 740 Ill. Comp. Stat. 175/1 *et seq.*

140.    By virtue of the numerous acts of illegal and improper conduct described above, including kickbacks and false marketing, Defendants knowingly caused to be presented to the Illinois Medicaid Program false or fraudulent claims for the improper payment or approval of the Defendants' products and devices and used false or fraudulent records to accomplish this purpose.

141.    The Illinois Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

142.    By reason of these payments, the Illinois Medicaid Program has been damaged, and continues to be damaged in a substantial amount.

31

## COUNT XII
### Indiana False Claims and Whistleblower Protection
### Burns Ind. Code Ann. § 5-11-5.5-1 *et seq.*
### Against Defendant Healogics, Inc.

143.    The allegations of the preceding paragraphs are realleged as if fully set forth below.

144.    This is a claim for treble damages and civil penalties under the Indiana False Claims and Whistleblower Protection Law. Burns Ind. Code Ann. § 5-11-5.5-1 *et seq.*

145.    By virtue of the numerous acts of illegal and improper conduct described above, including kickbacks and false marketing, Defendants knowingly caused to be presented to the Indiana Medicaid Program false or fraudulent claims for the improper payment or approval of the Defendants' products and devices and used false or fraudulent records to accomplish this purpose.

146.    The Indiana Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

147.    By reason of these payments, the Indiana Medicaid Program has been damaged, and continues to be damaged in a substantial amount.

## COUNT XIII
### Louisiana Medical Assistance Programs Integrity Law
### La. Rev. Stat. Ann. § 46:437.1 *et seq.*
### Against Defendant Healogics, Inc.

148.    The allegations of the preceding paragraphs are realleged as if fully set forth below.

149.    This is a claim for treble damages and civil penalties under the Louisiana Medical Assistance Programs Integrity Law. La. Rev. Stat. Ann. § 46:439.1 *et seq.*

32

150.    By virtue of the numerous acts of illegal and improper conduct described above, including kickbacks and false marketing, Defendants knowingly caused to be presented to the Louisiana Medicaid Program false or fraudulent claims for the improper payment or approval of the Defendants' products and devices and knowingly used false or fraudulent records to accomplish this purpose.

151.    The Louisiana Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

152.    By reason of these payments, the Louisiana Medicaid Program has been damaged, and continues to be damaged in a substantial amount.

## COUNT XIV
### Massachusetts False Claims Act
### Mass. Ann. Laws ch. 12, § 5(A) *et seq.*
### Against Defendant Healogics, Inc.

153.    The allegations of the preceding paragraphs are realleged as if fully set forth below.

154.    This is a claim for treble damages and civil penalties under the Massachusetts False Claims Act. Mass. Ann. Laws ch. 12, § 5(A) *et seq.*

155.    By virtue of the numerous acts of illegal and improper conduct described above, including kickbacks and false marketing, Defendants knowingly caused to be presented to the Massachusetts Medicaid Program false or fraudulent claims for the improper payment or approval of the Defendants' products and devices and used false or fraudulent records to accomplish this purpose.

33

156.    The Massachusetts Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

157.    By reason of these payments, the Massachusetts Medicaid Program has been damaged, and continues to be damaged in a substantial amount.

## COUNT XV
### Michigan Medicaid False Claim Act
### Mich. Comp. Laws §400.601 *et seq.*
### Against Defendant Healogics, Inc.

158.    The allegations of the preceding paragraphs are realleged as if fully set forth below.

159.    This is a claim for treble damages and civil penalties under the Michigan Medicaid False Claim Act. MCL § 400.601 *et seq.*

160.    By virtue of the numerous acts of illegal and improper conduct described above, including kickbacks and false marketing, Defendants knowingly caused to be presented to the Michigan Medicaid Program false or fraudulent claims for the improper payment or approval of the Defendants' products and devices and used false or fraudulent records to accomplish this purpose.

161.    The Michigan Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

162.    By reason of these payments, the Michigan Medicaid Program has been damaged, and continues to be damaged in a substantial amount.

## COUNT XVI
### Minnesota False Claims Act
### Minn. Stat. § 15C.01 *et seq.*
### Against Defendant Healogics, Inc.

163.    The allegations of the preceding paragraphs are realleged as if fully set forth below.

164.    This is a claim for treble damages and civil penalties under the Minnesota False Claims Act. Minn. Stat. § 15C.01 *et seq.*

165.    By virtue of the numerous acts of illegal and improper conduct described above, including kickbacks and false marketing, Defendants knowingly caused to be presented to the Minnesota Medicaid Program false or fraudulent claims for the improper payment or approval of the Defendants' products and devices and used false or fraudulent records to accomplish this purpose.

166.    The Minnesota Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

167.    By reason of these payments, the Minnesota Medicaid Program has been damaged, and continues to be damaged in a substantial amount.

## COUNT XVII
### Montana False Claims Act
### Mont. Code Ann. §17-8-401 *et seq.*
### Against Defendant Healogics, Inc.

168.    The allegations of the preceding paragraphs are realleged as if fully set forth below.

169.    This is a claim for treble damages and civil penalties under the Montana False Claims Act. Mont. Code Ann. § 17-8-401 *et seq.*

170.    By virtue of the numerous acts of illegal and improper conduct described above, including kickbacks and false marketing, Defendants knowingly caused to be presented to the Montana Medicaid Program false or fraudulent claims for the improper payment or approval of the Defendants' products and devices and used false or fraudulent records to accomplish this purpose.

171.    The Montana Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

172.    By reason of these payments, the Montana Medicaid Program has been damaged, and continues to be damaged in a substantial amount.

## COUNT XIII
### Nevada False Claims Act
### Nev. Rev. Stat. § 357.010 *et seq.*
### Against Defendant Healogics, Inc.

173.    The allegations of the preceding paragraphs are realleged as if fully set forth below.

174.    This is a claim for treble damages and civil penalties under the Nevada False Claims Act. Nev. Rev. Stat. § 357.010 *et seq.*

175.    The allegations of the preceding paragraphs are realleged as if fully set forth below. By virtue of the numerous acts of illegal and improper conduct described above, including kickbacks and false marketing, Defendants knowingly caused to be presented to the Nevada Medicaid Program false or fraudulent claims for the improper payment or approval of the Defendants' products and devices and used false or fraudulent records to accomplish this purpose.

36

176.    The Nevada Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

177.    By reason of these payments, the Nevada Medicaid Program has been damaged, and continues to be damaged in a substantial amount.

## COUNT XIX
## New Jersey False Claims Act
## N.J. Stat. § 2A:32C-1 *et seq.*
## Against Defendants Healogics, Inc. and St. Mary Medical Center

178.    The allegations of the preceding paragraphs are realleged as if fully set forth below. This is a claim for treble damages and civil penalties under the New Jersey False Claims Act. N.J. Stat. § 2A:32C-1 *et seq.*

179.    By virtue of the numerous acts of illegal and improper conduct described above, including kickbacks and false marketing, Defendants knowingly caused to be presented to the New Jersey Medicaid Program false or fraudulent claims for the improper payment or approval for off-label and improper uses of Defendants' products and devices and used false or fraudulent records to accomplish this purpose.

180.    The New Jersey Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

181.    By reason of these payments, the New Jersey Medicaid Program has been damaged, and continues to be damaged in a substantial amount.

37

## COUNT XX
### New Mexico Medicaid False Claims Act
### N.M. Stat. Ann. § 27-14-1 *et seq.*
### Against Defendant Healogics, Inc.

182. The allegations of the preceding paragraphs are realleged as if fully set forth below.

183. This is a claim for treble damages and civil penalties under the New Mexico Medicaid False Claims Act. N.M. Stat. Ann. § 27-14-1 *et seq.*

184. By virtue of the numerous acts of illegal and improper conduct described above, including kickbacks and false marketing, Defendants knowingly caused to be presented to the New Mexico Medicaid Program false or fraudulent claims for the improper payment or approval of the Defendants' products and devices and used false or fraudulent records to accomplish this purpose.

185. The New Mexico Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

186. Relators are "affected persons" as described in the New Mexico False Claims Act, N.M. Stat. Ann. § 27-14-7.

187. Relators' counsel is attempting to obtain from the Department of Human Services in New Mexico the necessary notification that there "is substantial evidence that a violation of the Medicaid False Claims Act has occurred" pursuant to N.M. Stat. Ann. § 27-14-7E(2).

188. By reason of these payments, the New Mexico Medicaid Program has been damaged, and continues to be damaged in a substantial amount.

38

### COUNT XXI
### New York False Claims Act
### N.Y. State Fin. Law § 187 *et seq.*
### Against Defendant Healogics, Inc.

189.    The allegations of the preceding paragraphs are realleged as if fully set forth below.

190.    This is a claim for treble damages and civil penalties under the New York False Claims Act. N.Y State Fin. Law § 187 *et seq.*

191.    By virtue of the numerous acts of illegal and improper conduct described above, including kickbacks and false marketing, Defendants knowingly caused to be presented to the New York Medicaid Program false or fraudulent claims for the improper payment or approval of the Defendants' products and devices and used false or fraudulent records material to a false or fraudulent claim to accomplish this purpose.

192.    The New York Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

193.    By reason of these payments, the New York Medicaid Program has been damaged, and continues to be damaged in a substantial amount.

### COUNT XXII
### North Carolina False Claims Act
### N.C. Gen. Stat. § 1-605 *et seq.*
### Against Defendant Healogics, Inc.

194.    The allegations of the preceding paragraphs are realleged as if fully set forth below.

195.    This is a claim for treble damages and civil penalties under the North Carolina False Claims Act, N.C. Stat. § 1-605 *et seq.*

39

196.    By virtue of the numerous acts of illegal and improper conduct described above, including kickbacks and false marketing, Defendants knowingly caused to be presented to the North Carolina Medicaid Program false or fraudulent claims for the improper payment or approval of the Defendants' products and devices and used false or fraudulent records to accomplish this purpose.

197.    The North Carolina Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

198.    By reason of these payments, the North Carolina Medicaid Program has been damaged, and continues to be damaged in a substantial amount.

## COUNT XXIII
### Oklahoma Medicaid False Claims Act
### Okla. Stat. tit. 63 § 5053 *et seq.*
### Against Defendant Healogics, Inc.

199.    The allegations of the preceding paragraphs are realleged as if fully set below.

200.    This is a claim for treble damages and civil penalties under the Oklahoma Medicaid False Claims Act, Okla. Stat. tit. 63 § 5053 *et seq.*

201.    By virtue of the numerous acts of illegal and improper conduct described above, including kickbacks and false marketing, Defendants knowingly caused to be presented to the Oklahoma Medicaid Program false or fraudulent claims for the improper payment or approval of the Defendants' products and devices and used false or fraudulent records to accomplish this purpose.

40

202.    The Oklahoma Medicaid Program, unaware of the falsity or fraudulent

nature of the claims caused by Defendants, paid for claims that otherwise would not have

been allowed.

203.    By reason of these payments, the Oklahoma Medicaid Program has been

damaged, and continues to be damaged in a substantial amount.

### COUNT XXIV
### Rhode Island False Claims Act
### R.I. Gen. Laws § 9-1.1-1 *et seq.*
### Against Defendant Healogics, Inc.

204.    The allegations of the preceding paragraphs are realleged as if fully set

forth below.

205.    This is a claim for treble damages and civil penalties under the Rhode

Island False Claims Act. R.I. Gen. Laws § 9-1.1-1 *et seq.*

206.    By virtue of the numerous acts of illegal and improper conduct described

above, including kickbacks and false marketing, Defendants knowingly caused to be

presented to the Rhode Island Medicaid Program false or fraudulent claims for the

improper payment or approval of the Defendants' products and devices and used false or

fraudulent records to accomplish this purpose.

207.    The Rhode Island Medicaid Program, unaware of the falsity or fraudulent

nature of the claims caused by Defendants, paid for claims that otherwise would not have

been allowed.

208.    By reason of these payments, the Rhode Island Medicaid Program has

been damaged, and continues to be damaged in a substantial amount.

41

## COUNT XXV
### Tennessee False Claims Act, Tenn. Code § 4-18-101 *et seq.*
### Tennessee Medicaid False Claims Act, Tenn. Code Ann. § 71-5-181 *et seq.*
### Against Defendant Healogics, Inc.

209.    The allegations of the preceding paragraphs are realleged as if fully set forth below.

210.    This is a claim for treble damages and civil penalties under the Tennessee Medicaid False Claims Act, and the Tennessee False Claims Act. Tenn. Code Ann. § 71-5-181 *et seq.*

211.    By virtue of the numerous acts of illegal and improper conduct described above, including kickbacks and false marketing, Defendants knowingly caused to be presented to the Tennessee Medicaid Program (i.e. TennCare) false or fraudulent claims for the improper payment or approval of the Defendants' products and devices described above and used false or fraudulent records to accomplish this purpose.

212.    The Tennessee Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

213.    By reason of these payments, the Tennessee Medicaid Program has been damaged, and continues to be damaged in a substantial amount.

## COUNT XXVI
### Texas Medicaid Fraud Prevention Act
### Tex. Hum. Res. Code Ann. § 36.001 *et seq.*
### Against Defendant Healogics, Inc.

214.    The allegations of the preceding paragraphs are realleged as if fully set forth below.

215.    This is a claim for treble damages and civil penalties under the Texas Medicaid Fraud Prevention Act. Tex. Hum. Res. Code Ann. § 36.001 *et seq.*

42

216.    By virtue of the numerous acts of illegal and improper conduct described above, including kickbacks and false marketing, Defendants knowingly made a claim to the Texas Medicaid Program for a product that has been adulterated, debased, or mislabeled, or that is otherwise inappropriate, and caused to be presented to the Texas Medicaid Program false or fraudulent claims for the improper payment or approval of Defendants' products and used false or fraudulent records to accomplish this purpose.

217.    The Texas Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

218.    By reason of these payments, the Texas Medicaid Program has been damaged, and continues to be damaged in a substantial amount.

## COUNT XXVII
### Virginia Fraud Against Taxpayers Act
### Va. Code Ann. § 8.01-216.1 *et seq.*
### Against Defendant Healogics, Inc.

219.    The allegations of the preceding paragraphs are realleged as if fully set forth below.

220.    This is a claim for treble damages and civil penalties under the Virginia Fraud Against Taxpayers Act. Va. Code Ann. §8.01-216.1 *et seq.*

221.    By virtue of the numerous acts of illegal and improper conduct described above, including kickbacks and false marketing, Defendants knowingly caused to be presented to the Virginia Medicaid Program false or fraudulent claims for the improper payment or approval of the Defendants' products and devices and used false or fraudulent records to accomplish this purpose.

43

222.    The Virginia Medicaid Program, unaware of the falsity or fraudulent

nature of the claims caused by Defendants, paid for claims that otherwise would not have

been allowed.

223.    By reason of these payments, the Virginia Medicaid Program has been

damaged, and continues to be damaged in a substantial amount.

### COUNT XXIII
### Wisconsin False Claims Act
### Wis. Stat. § 20.931 *et seq.*
### Against Defendant Healogics, Inc.

224.    The allegations of the preceding paragraphs are realleged as if fully set

forth below.

225.    This is a claim for treble damages and civil penalties under the Wisconsin

False Claims Act. Wis. Stat. § 20.931 *et seq.*

226.    By virtue of the numerous acts of illegal and improper conduct described

above, including kickbacks and false marketing, Defendants knowingly caused to be

presented to the Wisconsin Medicaid Program false or fraudulent claims for the improper

payment or approval of the Defendants' products and devices and used false or fraudulent

records to accomplish this purpose.

227.    The Wisconsin Medicaid Program, unaware of the falsity or fraudulent

nature of the claims caused by Defendants, paid for claims that otherwise would not have

been allowed.

228.    By reason of these payments, the Wisconsin Medicaid Program has been

damaged, and continues to be damaged in a substantial amount.

44

## COUNT XXIX
### District of Columbia False Claims Act
### D.C. Code § 2-308.14 *et seq.*
### Against Defendant Healogics, Inc.

229.     The allegations of the preceding paragraphs are realleged as if fully set forth below.

230.     This is a claim for treble damages and civil penalties under the District of Columbia False Claims Act. D.C. Code § 2-308.03 *et seq.*

231.     By virtue of the numerous acts of illegal and improper conduct described above, including kickbacks and false marketing, Defendants knowingly caused to be presented to the District of Columbia Medicaid Program false or fraudulent claims for the improper payment or approval for off-label and improper uses of Defendants' products and devices and used false or fraudulent records to accomplish this purpose, and conspired with each other to effectuate this plan.

232.     The District of Columbia Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

233.     By reason of these payments, the District of Columbia Medicaid Program has been damaged, and continues to be damaged in a substantial amount.

## COUNT XXX
### The City of Chicago False Claims Act
### Chicago Municipal Code, § 1-22-010 *et seq.*
### Against Defendant Healogics, Inc.

234.     The allegations of the preceding paragraphs are realleged as if fully set forth below.

235.     This is a claim for treble damages and civil penalties under the City of Chicago False Claims Act.  Chicago Municipal Code § 1-22-010 *et seq.*

45

236.    By virtue of the numerous acts of illegal and improper conduct described above, including kickbacks and false marketing, Defendants knowingly caused to be presented to the Chicago Department of Public Health false or fraudulent claims for the improper payment or approval of the Defendants' products and devices and used false or fraudulent records to accomplish this purpose.

237.    Defendant Healogics is a "city contractor" as defined in Chicago Municipal Code § 1-22-010.

238.    The City of Chicago Department of Public Health, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

239.    By reason of these payments, the City of Chicago has been damaged, and continues to be damaged in a substantial amount.

46

## COUNT XXXI
### New York City False Claims Act
### New York City Adm. Code, § 7-801 *et seq.*
### Against Defendant Healogics, Inc.

240. The allegations of the preceding paragraphs are realleged as if fully set forth below.

241. This is a claim for treble damages and civil penalties under the New York False Claims Act, New York Adm. Code, § 7-801.

242. By virtue of the numerous acts of illegal and improper conduct described above, including kickbacks and false marketing, Defendants knowingly caused to be presented to New York City false or fraudulent claims for the improper payment or approval of the Defendants' products and devices and used false or fraudulent records to accomplish this purpose.

243. The New York City Health and Hospitals Corporation, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

244. By reason of these payments, the New York City Health and Hospitals Corporation has been damaged, and continues to be damaged in a significant amount.

## COUNT XXXVII
### UNJUST ENRICHMENT
### Against All Defendants

245. The allegations of the preceding paragraphs are realleged as if fully set forth below.

246. This is a claim for the recovery of monies by which Defendants have been unjustly enriched.

47

247.    Defendants have been unjustly enriched with federal monies which they should not in good conscience be permitted to retain.

248.    By directly or indirectly obtaining federal funds to which they were not entitled, Defendants were unjustly enriched, and are liable to account and pay such amounts, or the proceeds therefrom, which are to be determined at trial, to the United States.

## PRAYER FOR RELIEF

WHEREFORE, Relator Karen Harcourt, D.O., requests that judgment be entered against Defendants, ordering that:

      a.  Defendants cease and desist from violating the False Claims Act, 31 U.S.C. § 3729 *et seq.*;

      b.  Defendants pay not less than $5,500 and not more than $11,000 for each violation of 31 U.S.C. § 3729, plus three times the amount of damages the United States has sustained because of Defendants' actions;

      c.  Relators be awarded the maximum "relators' share" allowed pursuant to 31 U.S. C. § 3730(d) and similar provisions of the state false claims acts;

      d.  Relators be awarded all costs of this action, including attorneys' fees and costs pursuant to 31 U.S. C. § 3730(d) and similar provisions of the state false claims acts;

      e.  Relators be awarded all litigation costs, expert fees, and reasonable attorneys' fees incurred as provided pursuant to 31 U.S.C. § 3730(h) and other applicable law;

      f.  Defendants be enjoined from concealing, removing, encumbering or disposing of assets which may be required to pay the civil monetary penalties imposed by the Court;

      g.  Defendants disgorge all sums by which they have been enriched unjustly by its wrongful conduct; and

      h.  The United States, the Individual States, and Relators recover such other relief as the Court deems just and proper.

Respectfully submitted,

Dated:  August 1, 2014

Brian J. McCormick, Jr., Esquire
**ROSS FELLER CASEY, LLP**
1650 Market Street
Suite 3450
Philadelphia, PA  19103
Tel.: (215) 574-2000
Fax: (215) 574-3080
bmccormick@rossfellercasey.com

Attorneys for Relator Karen Harcourt, D.O.

49